LILLIAN VANDERBERG, RESPONDENT *v.* J. H. CONNOLY, THE MERCHANTS PROTECTIVE ASSOCIATION, AND ELI L. PRICE, APPELLANTS.

ARREST IN CIVIL ACTION—UNDERTAKING—SURETIES—ESTOPPEL—
   JUSTICE OF THE PEACE—WHEN DE FACTO OFFICER—ELEMENTS
   OF DAMAGE FOR WRONGFUL ARREST.

*Arrest in Civil Action—Undertaking—Sureties—Estoppel.*

When the undertaking required by statute to be given before a defendant can be arrested in a civil action, is not given until after the arrest, but is given by the sureties with full knowledge of the attendant facts and circumstances, and without objection as to time of its execution, they cannot afterwards be heard to complain.

*Justice of the Peace—When De Facto Officer.*

When the unconstitutionality or invalidity of a law authorizing the appointment of a justice of the peace is doubtful, and the officer has been appointed, has qualified, and has discharged the duties pertaining to the office without question, as to the public he is a *de facto* officer.

*Elements of Damage for Wrongful Arrest.*

When the arrest and imprisonment of a defendant is caused in a civil action, and the sureties on the undertaking therein bound themselves to pay plaintiff all costs and all damages which she might sustain in consequence of the arrest or imprisonment, in case it should turn out to be without probable cause or wrongful, and the defendant is afterwards discharged and judgment entered in her favor, in an action on the undertaking for damages, the jury may consider, as elements in assessing damages, the mental anguish and physical illness caused by the arrest and imprisonment and also customary attorney's fees in procuring defendant's discharge.

(Decided October 22, 1898.)

Appeal from the District Court of Salt Lake County, Hon. A. N. Cherry, *Judge.*

Action by plaintiff against the principal and sureties on a bond given in civil arrest. From a judgment for plaintiff defendants appeal. *Affirmed.*

*Messrs. Krebs & Hoppaugh,* for appellants.

That he (the justice before whom the case was tried) was not a justice of the peace *de jure,* see *In re Cloherty,* 27 Pac. 1064; *State* v. *9 Justices,* 90 Tenn. 722; *People* v. *Toal,* 85 Cal. 333.

Upon the question of delegation of legislative power see Cooley's Constitutional Limitations, 5th ed., p. 139; *McCornick* v. *Thatcher,* 8 Utah, 294; *Winters* v. *Hughes,* 3 Utah, 433; *ex parte Wall,* 48 Cal., 279; *Dowling* v. *Lancashire Ins. Co.,* 31 L. R. A. 112; *Anderson* v. *M. F. Ins. Co.,* 28 L. R. A. 610; *Galesburg* v. *Hawkinson,* 75 Ills., 183; *People* v. *Carpenter,* 24 N. Y. 89.

He (the justice before whom the case was tried) was not *de facto* a justice. That there cannot be a *de facto* officer without a *de jure* officer has been so often decided that it hardly requires citation of authorities. Meacham on Public Officers, Sec. 324, and cases cited; *Norton* v. *Shelby County,* 118 U. S. 425; *Hildreth's Heirs* v. *McIntire's Devisees,* 19 A. Dec. 61.

It follows that since there was no justice there could be no action and certainly no statutory bond. There was no court to make an order for arrest and the undertaking which was the inducement for the order, certainly was void as a statutory undertaking. *Benedict* v. *Bray,* 2 Cal. 257; *Coburn* v. *Townsend,* 103 Cal. 233; *Coffrey* v.

*Dudgeon,* 38 Ind. 512; *Hicks* v. *Mendenhall,* 17 Minn. 453; *Bayless* v. *Bank,* 15 Ohio St. 606; *Couchman* v. *Lisle,* 33 S. W. 940; *Olds* v. *State,* 6 Blackford (Indiana) 91.

But even if Blazer (before whom the case was tried) had been a justice of the peace, the undertaking is not a statutory undertaking and is without consideration.

The arrest in the case was attempted to be made under Title 7, Vol. 2, C. L. 1888, Sec. 3261 *et seq.*

Sec. 3264 provides before making the order the Judge must require a written undertaking on the part of the plaintiff, etc. The order was made without the undertaking and all proceedings were void.

"The bond is antecedent of the attachment and accompanies in point of time the affidavit which must be made before the writ is issued. It depends for its legal effect upon the writ. If no writ were issued such a bond would be null and void." Shinn on Attachments, Sec. 182; *Hicks* v. *Mendenhall,* 17 Minn. 453; *Couchman* v. *Lisle,* 33 S. W. 940; Shinn on Attachments, Sec. 154 and cases cited; Waples on attachments and garnishment, 2d ed., Secs. 167–168 and cases cited.

Nor are we estopped to assert this fact. The undertaking expressly recites, "Whereas the defendant has been arrested;" "The truth appears" in the face of the bond.

This is not an action sounding in tort. The plaintiff had her remedy in an action for false imprisonment. She elects however, to sue upon the undertaking and must be confined to the letter of the bond.

No malice was proven or claimed upon the trial. The issue was simply her right to recover for damages sustained during the contract. Even if malice had been proven no exemplary damages could have been given be-

cause on actions of contract exemplary damages are not admitted. To permit such damages as loss of credit or mental anguish would eliminate the distinction between action in tort and upon a contract. *Elder* v. *Kutner*, 32 Pac. 563; *Alexander* v. *Jacoby*, 23 Ohio St. 358; *Campbell* v. *Chamberlain*, 10 Iowa, 337; *Reidhar* v. *Burger*, 8 B. Monroe (Kentucky), 160; *Plumb* v. *Woodmansee*, 34 Iowa, 116.

The sureties were only liable for such damages as resulted from the arrest. Surely it was immaterial what a reasonable attorney's fee would be for the trial of the main case. Such expenses are never a proper element of damages. *Sutorius* v. *North*, 13 N. Y. Supp. 557; same case, 20 N. Y. Supp. 726; *Noble* v. *Arnold*, 23 Ohio State, 264; *Hovey* v. *Rubber Tip Co.*, 50 N. Y. 335; *Dislrow* v. *Garcia*, 52 N. Y. 654; *Langworthy* v. *McKelvey*, 25 Iowa, 48.

The only attorney's fee proven was the fee paid for the entire case by Vandberg, a defendant. No estimate was given of the value of the attorney's services for procuring the discharge alone. One entire fee was proven. This money was paid by Vandberg, a party to the suit, to his attorney for defending him. If the attorney's fee had not been paid it could not be recovered until paid by the plaintiff. Plaintiff had not sustained damages. *Wilson* v. *McEvoy*, 25 Cal. 169; *Proder* v. *Grimm*, 28 Cal. 1; *Elder* v. *Kutner*, 32 Pac. 563.

Where the services are gratuitous or are paid by a third party many cases in tort hold that damages are not recoverable. *Golder* v. *Lund*, 50 Neb. 867; *Fry* v. *Hillan*, 37 S. W. 359; *Peppercorn* v. *Black River Falls*, 89 Wis. 38.

*Messrs. Powers, Straup & Lippman*, for respondents.

As supporting our contention that appellants are estopped from denying the validity of the bond, we refer the court to Brandt on Suretyship, Sec. 42, wherein the author states: "The general rule is sureties are estopped to deny the facts recited in the obligation signed by them, and this whether the recitals are true or false in fact."

Also Bigelow on Estoppel, p. 375, "When a bond is voluntarily entered into and the principal enjoys the benefit it was intended to secure, and the breach occurs, it is then too late to raise the question of its validity. The parties are estopped from availing themselves of such a defense." *U. S.* v. *Hodson*, 10 Wall. 395; *Daniels* v. *Tearney*, 102 U. S. 421; *Moore* v. *Earle*, 91 Cal. 634; *Jones* v. *Gordon*, 82 Ga. 570; *Clays' Administrator* v. *Edwards*, 84 Ky. 550.

Though the bond is not good as a statutory bond it nevertheless is good as a common law bond. *State* v. *Canon*, 34 Iowa, 325; *Wright* v. *Keyes*, 103 Pa. State, 567; *Cotton's Guardian* v. *Wolf*, 77 Ky. 238.

That Blazer was certainly a justice *de facto*, see *State* v. *Carroll*, 30 Conn. 449; 5th A. & E. Enc. of Law, 96.

As to the public who dealt with him the acts of Blazer are valid. Meacham on Public Officers, Sec. 328.

A mere intruder may grow into an officer *de facto* if his assumption of the office is acquiesced in. Meacham on Public Officers, 321.

Everyone appointed to an office which has no legal existence, may yet fill that office as a *de facto* officer. *Kelly* v. *Storey*, 6 Heisk (Tenn.) 202; *Campbell* v. *Commonwealth*, 96 Pa. St. 344.

But the validity of the acts of Blazer cannot be questioned collaterally. They can only be questioned in proceedings instituted to determine their validity. Meacham, Sec. 330; 5th A. & E. Enc. of Law, 106.

The jury in assessing damages for the breach of a contract may take into consideration the mental anguish of the plaintiffs if they suffered any mental anguish on account of the matters set out in the complaint. *Renihan* v. *Wright*, 125 Ind. 536; *Western Union Telegraph Co.,* v. *Broesche*, 72 Tex., 654.

## STATEMENT OF FACTS.

It appears from this record that on March 14, 1894, defendant, J. H. Connoly, commenced an action for $26.25, against the plaintiff and J. M. Vanderberg her husband, before J. B. Blazer, an acting justice of the peace of the fourth precinct of Salt Lake City; that on March 19, 1894, Connoly filed an affidavit alleging plaintiff was about to depart from the Territory with the intention of defrauding her creditors; that Blazer, as such justice, thereupon made an order for plaintiff's arrest and delivered it to the sheriff of Salt Lake county, who arrested her and brought her before the justice; that the defendant J. H. Connoly, the Merchants Protective Association, and Eli L. Price thereupon gave a bond entitled as follows:

"In the Justice's Court, City and County of Salt Lake. Fourth Precinct, Territory of Utah. Before J. B. Blazer, Justice. J. H. Connoly, plaintiff, v. J. H. Vanderberg, and Mrs. J. H. Vanderberg, his wife, defendants."

And in the words and figures following:

## "UNDERTAKING ON AN ARREST.

"Whereas, in a certain action in the justice court of the city and county of Salt Lake, wherein J. H. Connoly is plaintiff, and J. H. Vanderberg and Mrs. J. H. Vanderberg, his wife, are defendants, an order was duly made and delivered to the sheriff or constable of the city and county of Salt Lake, requiring him forthwith to arrest the said Mrs. J. H. Vanderberg, one of the defendants, and hold her to bail in the sum of $100.00; and the said

sheriff having arrested the said defendant and taken her into custody by virtue of the said order,

"Now, therefore we, Eli L. Price, and the Merchants' Protective Association, a corporation, as sureties, and J. H. Connoly, as principal, are jointly and severally bound in the sum of $500.00 on the part of the plaintiff in said action, that if the said defendant recover judgment, the said plaintiff will pay to said defendant all costs that may be adjudged to the said defendant and all damages which she may sustain by reason of the said arrest, if the same be wrongful or without sufficient cause.

"Witness our hands and seals in the city and county of Salt Lake, this 19th day of March, 1894"; that said undertaking was duly signed by the defendants to this action, and to which the following affidavit was attached:

"TERRITORY OF UTAH, } ss.
  County of Salt Lake, }

"Eli Price, and Francis G. Luke, manager for the Merchants' Protective Association, a corporation, the sureties whose names are subscribed to the above undertaking being severally duly sworn each for himself says, the former, that he is a resident and householder, and the latter, that the said corporation is duly organized under the laws of Utah, and doing business therein, in the said territory and county, and each is worth the sum in the undertaking specified as the penalty thereof, over and above all just debts and liabilities exclusive of property exempt from execution.

"Subscribed and sworn to before me this 19th day of March, 1894.

"J. B. BLAZER,
"Justice of the Peace.

It further appears that upon the execution of the above

bond the plaintiff was imprisoned two days, and then upon a hearing before said Blazer, as such justice, he found that said plaintiff Connoly had no cause of action, and this plaintiff, the defendant in that case, was discharged from further imprisonment, and judgment was entered for her.

This action was brought by the plaintiff upon the foregoing bond, to recover damages sustained by her in consequence of the arrest and imprisonment without reasonable cause, and for the costs and expenses incurred in her defense. The evidence was submitted to a jury, who returned a verdict against the defendants for $500, the penalty of the undertaking, and a motion for a new trial by the defendants was overruled, and judgment was entered against them on the verdict, and for costs. From the judgment the defendants took this appeal, and claim it is erroneous for several reasons.

ZANE, C. J., having stated the facts, delivered the opinion of the court.

The defendants insist that the justice of the peace should have required the plaintiff to give the undertaking before making the order for the arrest, and that therefore it was void, and for the further reason that it was not given until the defendant had been arrested. It appears that the bond was given immediately after the defendant was arrested and brought into court, and that she was thereafter imprisoned two days. The circumstances under which the order and arrest were made, and the undertaking given, authorize the inference that the justice anticipated the execution of the undertaking when he made the order for the arrest, and delivered it to the officer. The defendants understood the purpose of the bond when they signed it, and because they did so the plaintiff was imprisoned two days. Understanding the situation the defendants volun-

tarily executed the undertaking, and must have contemplated the consequences of their act to the plaintiff. They should have objected to its execution at that time. Not having objected then, they cannot be heard to object now.

The defendants expressly undertook to pay to Mrs. Vanderberg, in case judgment should be rendered against Connoly, the plaintiff in that case, all costs that should be adjudged to her, and all damages she might sustain in consequence of the arrest and imprisonment, if the same should turn out to be wrongful. Having voluntarily executed the undertaking, with the knowledge that the order and arrest had been made, and in view of the fact that the defendants must have understood her imprisonment would be continued in consequence of the undertaking, we are of the opinion that it should not be held of no effect as to them, because the order and arrest were made before they executed it.

It appears from the record that J. B. Blazer, whose authority as justice of the peace is questioned by the defendants, was acting as such justice, and had been so acting for a considerable time under an appointment of the county court of Salt Lake County, and that another justice of the peace, who had been duly elected and qualified, was also acting as such justice for the same district. The appointment was made during the existence of the late Territory of Utah, in pursuance of section 161, C. L. U. 1888, which declared that "Each precinct in this Territory shall elect one justice of the peace, and one constable, and the same may be increased in any precinct by the county court, whenever they shall deem that the public good requires it."

The next section provided for the qualification of such justices by taking an oath, and the execution of a bond; and section 164 *Id.* authorized the county court to fill vacancies

in the office for any cause until the next general election.

Section 161, quoted, does not describe the office of justice of the peace, nor does the act in which it is found do so.    It is an office known to and employed in all the states and territories, as well as under governments in other lands.    Justice of the peace is the name of an official to which belongs certain jurisdiction that is well understood. The section quoted provides for the election of one justice of the peace in each precinct, and then authorizes the county court to increase the number whenever it deems the public good requires such increase.    It is claimed the last provision is contrary to the organic act, and of no effect.

The organic act separated the powers of the territorial government into three departments, and delegated the law making power to the legislature.

It is claimed an increase of the number of justices of the peace in any district was the exercise of the legislative power, and could not be delegated by it to the county court.

The language of the organic act separating the powers of the territorial government into three departments and confiding the executive power to one, the law making power to another, and the judicial power to a third, is similar to the language of the constitution of the United States separating the law making power of that government and delegating the executive power to one class of officers, the law making power to another class, and the judicial powers to a third class.    That instrument delegates the law making power of the federal government to Congress with as much certainty and clearness as the organic act delegated the law making power of the territory to its legislature.    Yet Congress as early as June 6, 1874, authorized the supreme court of the territory to

appoint commissioners, with all the powers and subject to all the duties of commissioners of the circuit courts of the United States, and with authority to take acknowledgments of bail, and sit as examining and committing magistrates in all cases arising under the law of the territory as justice of the peace, and to increase the number of such commissioners in its discretion. 1 C. L. U. 1888 Sec. 6, p. 107.

And again by Sec. 7 of an act in force March 3, 1887, the jurisdiction of said commissioners was extended as follows: "That commissioners appointed by the supreme courts and district courts in the Territory of Utah shall possess and may exercise all the powers and jurisdiction that are or may be possessed or exercised by justices of the peace in said Territory under the laws thereof, and the same powers conferred by law on commissioners appointed by circuit courts of the United States."

By this act congress gave to such commissioners all the powers of commissioners appointed by the circuit courts of the United States and justices of the peace of the Territory, and again recognized the power of the supreme court of the Territory to appoint said officers in its discretion and create such courts, and also delegated the same power to the district courts of the Territory. These acts of Congress were acted upon, and those courts exercised the power of increasing said courts without question for many years, and until the territorial government was superceded by statehood.

If the same rule is to be applied to the territorial enactment in question, that was applied to the congressional enactments mentioned, under similar limitations imposed by the Constitution of the United States, the section 161, above quoted, authorizing the county court to increase

the number of justices of the peace in any precinct must be held to be valid.

It is further urged that the organic act required justices of the peace to be elected. If the county court possessed the power to increase the number of justices as they did, then in order to make such increase immediately effectual it was necessary to appoint an incumbent of the office until an election should be held at which an incumbent could be elected.

Section 1, of an Act of Congress relating to justices of the peace in the territories provided that when for any cause there should be a vacancy in the office of the justice of the peace in any of the territories of the United States, it would be lawful to fill such vacancy by appointment or election, as might be provided by the territorial legislature.

But the view we take of this case does not render it necessary to decide whether the law, under which Blazer, the justice, was appointed, should have been held valid had his authority been questioned by a direct proceeding by the Territory. In this case a collateral attack is made upon his authority to act as such, and the question is can he be regarded as a *de facto* officer? If he can be held an officer *de facto*, it is unnecessary to decide that he was or was not a justice of the peace *de jure*. Whether Blazer's appointment, qualification, and assumption to act as justice of the peace was in pursuance of a valid law presents a question as to which there must be doubt, without the judgment of a competent court affirming or denying its validity —a question as to which lawyers and courts might differ. A law might be so palpably unconstitutional as to be so clearly void as to leave no room to doubt its invalidity. In the latter case courts have held that appointments to judicial office should not give color of right to exercise the powers

purported by such unconstitutional law. But as to this proposition there is a conflict in the authorities. But when the unconstitutionality or invalidity of the law is doubtful and the officer has been appointed, and qualified, and has discharged the duties pertaining to it without question, as it appears from the record Blazer had, litigants in his courts should be protected—that as to the public he should be held a *de facto* officer.

Doubtless Connoly believed that Blazer was authorized to act as a justice. He commenced this suit, obtained the order for plaintiff's arrest, and she was arrested and imprisoned. She had no option, and it would appear to be a denial of justice to say to her that she is without remedy because the law was invalid under which the justice acted.

Under the circumstances of this case, as we have stated them, we are of the opinion that the law in question, and the appointment and qualification of Blazer, and his exercise of the functions belonging to the office of justice of the peace, gave color to the rights belonging to it, and that he must be held to have been a justice of the peace *de facto*. *State* v. *Carroll*, 38 Conn. 449. *Stevens* v. *Miller*, 13 Am. Dec. 371. 8 Am. & Eng. Enc. of Law, 781, (2d ed.) *Campbell* v. *Commonwealth*, 9 Pa. 344. *Fowler* v. *Bebee*, et al., 9 Mass. 231.

In *State* v. *Carroll*, *supra*, Chief Justice Butler gave the following definition of an officer *de facto*:

"An officer *de facto* is one whose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid, so far as they involve the interests of the public and third persons, where the duties of the office were exercised. 1. Without a known appointment or election, but under such circumstances of reputation or acquiescence as were calculated to induce

people without inquiry to submit or invoke his action, supposing him to be the officer he assumed to be. 2. Under color of a known and valid appointment or election, but where the officer has failed to conform to some precedent, requirement or condition, as to take an oath, give a bond, or the like. 3. Under color of a known election or appointment, void, because the officer was not eligible, or because there was a want of power in the electing or appointing body, or by reason of some defect or irregularity in its exercise, such ineligibility, want of power, or defect, being unknown to the public. 4. Under color of an election or appointment by or pursuant to a public, unconstitutional law, before the same is adjudged to be such."

According to the above definition, Blazer was clearly a *de facto* justice of the peace.

By the undertaking sued on the defendants bound themselves to pay the plaintiff all costs that might be adjudged to her, and all damages which she might sustain in consequence of her arrest and imprisonment in case it should turn out to be without probable cause or wrongful. The justice found that the arrest of plaintiff was wrongful and discharged her and entered judgment against the plaintiff, and the evidence in the record fails to show probable cause for the arrest, and no justification or excuse appears.

The assignment of errors raises the further question as to the elements the jury were authorized to take into consideration in assessing damages.

It is alleged that the court below erred in permitting evidence to go to the jury tending to prove mental anguish and physical illness in consequence of the arrest and imprisonment.

The affidavit for the arrest stated that plaintiff was about to depart from the Territory with the intention of defraud-

ing her creditors, and we must presume from the evidence defendants knew the purpose of the undertaking they signed; that it would probably cause her detention and imprisonment for a time.  Such deprivation of liberty, humiliation, disappointment, mortification and disgrace would naturally cause great mental distress, and might naturally result in sickness.  Such an undertaking is not like an attachment bond or a contract involving money or property considerations simply.  The undertaking involved the liberty of the woman, and the persons who made it should have anticipated the consequences of their act would be different from those of a bond involving money or other property merely.  When a person enters into a contract which if violated may be expected to cause mental distress and may naturally result in physical indisposition and illness, it must be presumed he contracted with reference to the payment of damages of that character. *Renihan* v. *Wright*, 21 Am. St. Rep. 249.  *Wes. Union Telegraph Co.* v. *Broesche*, 13 Am. St. Rep. 848.

Nor do we think the court erred in allowing proof of customary attorney's fees for services, such as were rendered to plaintiff in procuring her discharge, and the judgment in her favor.  The defendants should have anticipated the employment of an attorney by plaintiff when they executed the undertaking.  Persons arrested and imprisoned under the circumstances plaintiff was will usually consult and employ counsel.  Defendants should have contemplated such consequences, and that they would be liable therefor in case the arrest should turn out to be wrongful.  Damages and costs in such cases, by the weight of authority, includes attorney's fees.

We find no reversible error in the record.  Judgment affirmed with costs against appellants.

BARTCH J., and MINER, J., concur.